# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

## CIVIL RIGHTS COMPLAINT

| | | |
|---|---|---|
| **Syed K. Rafi, PhD.** | ) | |
| | ) | |
| *Plaintiff* | ) | |
| **V.** | ) | **Case No. 3:14-cv-01582-VLB** |
| | ) | |
| **Yale University School of Medicine (YSM)** | ) | |
| **&** | ) | |
| **YSM-Genetics Dept. Chairman,** | ) | |
| **Dr. Richard P. Lifton** | ) | |
| **(Official Capacity)** | ) | |
| *Defendants* | ) | |

## *Pro Se* PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT

I.   **PLAINTIFF'S HAS INDEED SERVED THE DEFENDANTS WITHIN 120 DAYS AFTER THE COURT'S ORDER GRANTING HIS *INFORMA PAUPARIS* MOTION**

In accordance with this Courts Local Rule 3, *Pro Se* Plaintiff submitted his complaint along with completed forms of summons.  Per Local Rule 4(b), the Clerk shall sign and seal the appropriate forms of the summons to accompany the service copies of the complaint.  Since Plaintiff had also simultaneously requested the Court to grant *informa pauparis* status (**Exhibit # 1**), the case was pending until the final decision to grant *informa pauparis* status was made, and the Clerk at the New Haven US District Court (*where the case was initially filed*) informed the Plaintiff that he could not proceed ahead with the case in any manner until the Court renders its final ruling on his *informa pauparis* status request..

Therefore, *Pro Se* Plaintiff took the unusual step of informing both the Defendants in this case, namely, Dr. Richard Lifton (*in his Official Capacity*) and the Yale University President, Dr. Peter Salovey, as well as the Dean of Yale School of Medicine, Dr. Alpern, via their official email addresses **(Exhibit # 2):**

> **To: "richard.lifton@yale.edu"** richard.lifton@yale.edu
>
> **Cc: "richard.alpern@yale.edu"** richard.alpern@yale.edu
>
> **Cc: "peter.salovey@yale.edu"** peter.salovey@yale.edu

as a "...Time- Sensitive Memorandum", on Tuesday, November 4, 2014 11:14 AM, that is 12 days after having filed the actual initial complaint on October 24, 2014 (Docket # 1), informing them **(Exhibit # 2; page 1, paragraph 2, line 3-10):**

> " **...... Currently, I am in the process of filing a civil complaint against YSM and Dr. Richard Lifton (*Official Capacity*) as being responsible for the ceaseless and reckless violations of my Civil Rights ever since I left YSM after completing my ABMG clinical cytogenetics training, given the extensive emails- documentation and the extensive record of having been retaliated against at Harvard Medical School and around the nation since then.  I will be lodging my complaint with the Federal Department of Education's Office for Civil Rights as well." ......**

Further, in the above email Memorandum, *Pro Se* Plaintiff has also very concisely indicated the reason for his complaint, as follows: **(Exhibit # 2; page 1, paragraph 1, line 3-11):**

.... "I wish to inform you that to this date I have not received any response in order to amicably resolve my stranded and dire situation consequent to your stealth actions (understandably on behalf of the Yale School of Medicine) to deny Dr. Qumsiyeh a *prima facie* case of racial discrimination for terminating his position at YSM, and to hire back Dr. Pober with the plan to use me as a witness against Dr. Qumsiyeh (*given my confidential report to you upon your coercive request to do so in order to facilitate the formal completion of my ABMG training at YSM*), in case he either files a case of concealed retaliation and/or resorts to demonstrations along with his Middle Eastern followers at Yale and New Haven, given his political activism"...

Further, in the above email Memorandum, *Pro Se* Plaintiff has also indicated (**Exhibit # 2; page 2, paragraph 4**):

"If I do not hear from either YSM or from Dr. Lifton within the next 15 days, I will certainly proceed ahead with the civil complaint, and will take it all the way... until justice is delivered! Regards."

Further, in the above email Memorandum, *Pro Se* Plaintiff has also indicated (**Exhibit # 2; page 2, paragraph 5, through page 5**) the alleged violations of Federal Laws involved therein, as follows:

"**Complaint Notes:**

1. Title VII of the Civil Rights Act of 1964 explicitly prohibits an employer from retaliating against an employee who has "made a

charge, testified, assisted or participated in" any charge of unlawful discrimination under the Act (42 U.S.C. § 2000e-3(a).

Recently, the first Circuit Allowed Retaliation Claim to Proceed Absent Direct Evidence of Decision Makers' Retaliatory Animus (See, *Travers v. Flight Services & Systems, Inc., No. 13-1438 (1st Cir. Dec. 12, 2013*); *and in Crawford v. Metropolitan Government of Nashville and Davidson County, Tennessee, No. 06-1595,* U.S. Supreme Court (January 26, 2009), Justices Hold Employee Response During An Internal Investigation Is "Protected Activity".

2. Title VI regulations provide that "[n]o recipient or other person shall intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by [Title VI], or because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this subpart." 28 C.F.R. § 42.108(e) (Department of Justice-Regulation.

3. Furthermore, in accordance with the Core Anti-discrimination Principles in Recipient's (such as Yale School of Medicine) of federal aid / grants, Yale University and its School of Medicine have voluntarily accepted the financial assistance in exchange for accepting the

conditions of Title VI or Title IX's regulations, including regulations prohibiting retaliation.

4.   Both Title VI and Title IX Support a Private Right of Action Against Retaliation Based on Allegations of "Intentional Discrimination":  Even to the extent that courts should construe Title VI or Title IX in light of Title VII, there is a strong argument in favor of implied rights of action against retaliation.

Title VI reaches private actors who are recipients of federal funds *(Pamela S. Karlen, Disarming the Private Attorney General, 2003 U. ILL. L. REV. 183, 196 n.83 (2003).*

5. U.S. Supreme Court Holds that Section 1981 Covers Retaliation Claims:

The U.S. Supreme Court agreed with the Seventh Circuit that section 1981 covers retaliation claims, including a retaliation claim based on one individual's concern for another's section 1981 rights. The Court's reasoning as follows: (a) in 1969, the Court's decision in *Sullivan v. Little Hunting Park, Inc., 396 U.S. 299 (1969)*, recognized that section 1981's sister statute, 42 U.S.C § 1982, included retaliation claims; (b) the Court has long interpreted sections 1981 and 1982 alike; (3) *in Patterson v. McLean Credit Union, 491 U.S. 164 (1989)*, the Court,

without mention of retaliation, narrowed the scope of section 1981 by excluding post-contract-formation conduct, where retaliation would most likely be found; but subsequently, Congress passed the Civil Rights Action of 1991, which superseded Patterson and explicitly defined the scope of section 1981 to include post-contract-formation conduct; and (4) since 1991, the lower courts have uniformly interpreted section 1981 as encompassing retaliation actions.

6. Additionally, Sullivan and Its Progeny Imply a Private Right of Action Against Retaliation:

The Supreme Court has consistently treated retaliation against civil rights complainants as a form of intentional discrimination. The Court has held that "retaliation offends the Constitution [because] it threatens to inhibit exercise of the protected right" and "is thus akin to an unconstitutional condition demanded for the receipt of a government-provided benefit." *Crawford-El v. Britton, 523 U.S. 574, 588 n.10 (1998) (citations and internal quotation marks omitted); see also Chandamuri v. Georgetown Univ., 274 F. Supp. 2d 71, 81 (D.D.C. 2003) (discussing Court's approach to retaliation in Crawford-El).* Specifically, the Court has interpreted 42 U.S.C. §§ 1982 and 1983 to bar retaliation against complainants or litigants even though these statutes do not contain explicit prohibitions against retaliation. See *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 277-87 1977).* In 1969, the Supreme

*Court in Sullivan v. Little Hunting Park, held that § 1982 implicitly prohibits retaliation.*

7.   I INVOKE CONTINUING VIOLATIONS DOCTRINE:

The continuing violation doctrine permits a complainant to pursue alleged discriminatory acts that occurred outside the statutory period under Title VII.  United States Supreme Court does recognize systemic violations, which involve the continuing policy or practice of discrimination on a company-wide basis, which policy or practice continues into the statutory period, as is alleged in this complaint.  Further, in *National Railroad Passenger Corp. (Amtrak) v. Morgan, 536 U.S. 101,122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002)*, the Supreme Court also left unresolved the issue of whether the continuing violation doctrine applies to systemic violations. However, continuing violation doctrine been accepted, to varying degrees, in employment litigations. The Ninth Circuit permitted to recover for acts outside the limitations period as long as the acts represented an ongoing unlawful employment practice. See, e.g., *Anderson v. Reno, 190 F.3d 930, 936 (9th Cir. 1999)*.  The Supreme Court affirmed the Ninth Circuit in part, reversed in part and remanded the matter. The Supreme Court defined the issue before it as "whether, and under what circumstances, a Title VII my may file suit on events that fall outside [the] statutory time period."

The Court, in a 5-4 split, viewed hostile environment claims differently than discrete discriminatory or retaliatory acts, noting that "[t]heir very nature involves repeated conduct." The Court held that a hostile environment claim generally does not occur on any given day, but rather occurs over a number of days or even years and is based on the cumulative effects of several acts. For that reason, the Court ruled that as long as one act contributing to the hostile environment claim occurs within the statutory period, a Title VII my may recover for the entire period of that hostile environment.

Accordingly, I Invoke the Continuing Violations Doctrine / Continuing Claims Doctrine in my allegations of prolonged ceaseless and reckless retaliatory and coercive violations.

The Harvard Medical School affiliated Brigham and Women's Hospital, along with all other major HMS-affiliated primary hospitals, namely, the Children's Hospital Boston, the Massachusetts General Hospital, and Dana Farber Cancer Institute, as well as Boston University Medical Center and the professional clinical cytogenetics employers around the nation as well ceaselessly and recklessly violated my Civil Rights due to the alleged retaliation and coercion by YSM through its Genetics Department Chairman, Dr. Richard Lifton (*directly, and indirectly through Dr. Cynthia Morton, Dr. Fred Bieber, Dr. Mira Irons, Dr. Richard*

*Maas, and Dr. Barbara Pober*), **for a prolonged period of time ever since I left YSM after completing my professional clinical cytogenetics training, in accordance with the Continuing Violations Doctrine as defined by the U.S. Supreme Court in *National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002*).**

**8.   In my civil case, additional legally sound rationale for the continuing reckless retaliation and intentional discrimination will be presented.**"

———————————————————

At last, this Court rendered the final ruling on the long pending *informa pauparis* status request on 04/07/2015 (**Exhibit # 3**) only after the case was transferred to Judge Victor A. Bolden for further proceedings from the New Haven District Court (**Exhibit # 4**).   It is important to note that the granting of the *informa pauparis* status  after two reviews by two Magistrate Judges at New Haven and Bridgeport Courts after the case was assigned to two different Judges at these Courts took several months before the case could finally be allowed to proceed ahead.   The decision by the New Haven Court to finally transfer the case to Bridgeport Court took several months as well after the initial filing of the case.   All these events and delays could not be controlled by *Pro Se* Plaintiff despite his repeated reminder calls to the Clerk's offices at the two Courts.

<u>Only thereafter</u>, by the end of April, 2015, via US Postal Service, Plaintiff received the summon forms from the Court's Clerk that were specifically meant to be served by the United States Marshalls Service, given the granting of the *Informa Pauparis* status (**Exhibit # 3**).

As per the instructions from the Court, Plaintiff, *Pro Se*, prepared the US Marshalls Service- summons providing Defendants' contact information (**Exhibit # 5**) and the complaint copies, and mailed them back to the Court, which were docketed on 06/09/2015, 63 days since granting the *informa pauparis* status on 04/07/2015.

Further, Plaintiff was informed by the Clerk that the 120 days-time period Is only effective from the date of granting the *informa pauparis* status (i.e., 04/07/2015). Plaintiff also verified this with the US Marshalls Service officials (*Ms. Loren at New Haven Marshalls Service office, Phone 203 773 2107, Ext. 3011; Supervisor at Bridgeport Marshalls Service, Phone 203 579 5897 / 5899) on 05/28/2015 and 06/11/2015*, who both additionally indicated that the Marshalls Service has up to 120 days' time frame to serve the Defendants <u>upon receiving the summons from the Court</u>, and they were busy as well.  However, on 07/24/2015 Defendants received the request to waive service of summons in this action (**Exhibit # 6**), which is 108 days after granting the *informa pauparis* status on 04/07/2015.

**Given, (1) the good and rational cause for the delay (**due to the New Haven District Court's decision to transfer of the initial complaint to Bridgeport District Court, and the Ordering and reviewing of Plaintiff's *informa pauparis* status petition by two Magistrate Judges at New Haven and Bridgeport Courts after the case was assigned to two different Judges at these Courts, took several months before the case could finally be allowed to proceed ahead! **), and given, (2) the timely service of the summons and the complaint per this Court's Order through US Marshalls Service, well within 120 days "after" the Court's Order granting Plaintiff's *informa pauparis* motion on 04/07/2015; and given, (3) the email notifications to the Defendants in this case "within" 12 days of having lodged the initial complaint on October 24, 2014** (*but simultaneously requesting informa pauparis status therein to proceed ahead with the complaint!*), **in advance of the summons through the US Marshalls Service,** correctly indicating therein: "Currently, Plaintiff is in the process of filing a civil complaint against YSM and Dr. Richard Lifton (*Official Capacity*) as being responsible for the ceaseless and reckless violations of my Civil Rights ever since he left YSM after completing his ABMG clinical cytogenetics training" (Exhibit # 2; page 1, paragraph 2, line 3- 6), **Plaintiff, *Pro Se*, requests the Court to dismiss Defendants' motion to dismiss the case** on the ground **that Plaintiff failed to serve the Defendants' within 120 days of the initial lodging of his complaint with the New Haven US District Court.**

II.     *PRO SE* PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR A MORE
        DEFINITE STATEMENT

Pro Se Plaintiff, being a non-legally trained person with scientific education can't
be expected to equal the legal scholarship of the attorneys representing the
Defendants.   Therefore, *Pro Se* Plaintiff, at the outset, requested the Court to
appoint an attorney to help him in drafting the complaint in a more professional
manner.  Hopefully, the Court will consider this request positively soon.

However, Plaintiff clearly sees the reason why the attorneys representing the
Defendants have opted to trivialize the complaint (*instead of responding to it
earnestly!)* by merely indicating that it is indiscernible, while the two Magistrate
Judges who studied the very same copy of the complaint had no problem in
discerning the allegations therein, as follows**:-**

> **"Plaintiff, who is *pro se*, filed this action against Dr. Richard Lifton
> (Lifton) and Yale University School of Medicine (YSM).  In this
> complaint, the petitioner alleges a "defensive deceptive plan" where
> Defendants actively sabotaged the employment opportunities that the
> Plaintiff may have had throughout the entire country.  The "defensive
> plan" as alleged by the Plaintiff, was initiated by the Defendants in
> order to escape a potential discrimination claim being brought by a
> third party.  He brings suit under Title VII of the Civil Rights act of 1964,
> specifically 42 U.S.C.A. § 2000e-3(a), alleging among other things,**

12

**retaliation by Defendants for participating in past employment discrimination claims".**

Given the above quoted **professional concise narration of *Pro Se* Plaintiff's complaint by none other than a Magistrate Judge at the US District Court of Connecticut,** the highly qualified and experienced attorneys representing the Defendants will now find it easier to comprehend and respond to the complaint in earnest.

**Additionally, they may refer to pages 2 through 9 in this document for a more detailed and definite statement of the complaint, as desired.**

Upon receiving the Defendants' earnest response to the detailed allegations of Continuing Violations of reckless and coercive retaliation and discrimination (***to this date, since Plaintiff's departure from Yale!***), where Defendants actively and ceaselessly sabotaged the employment opportunities that the Plaintiff may have had throughout the entire country, particularly, in collusion with the Harvard Medical School affiliated Brigham and Women's Hospital and Children's Hospital Boston. **Therefore, Plaintiff alleges coercive retaliatory continuing violations to this date in violation of Title VII of the Civil Rights Act of 1964, as amended (Title VII).** Plaintiff will submit his rebuttal response with multiple exhibits to assert and support these allegations.

The alleged and verified continuing violations of coercive retaliation in collusion with Yale School of Medicine (Dr. Lifton and Dr. Pober) that were also verified to be true (*through meetings with senior faculty members at Harvard Medical School*) emanated mainly consequent to Defendants' "defensive deceptive plan" (*as has been detailed in the complaint proper*); however, **Plaintiff additionally alleges continuing retaliation by Defendants for Plaintiff having participated in past employment discrimination claims, as has been presented in detail in the complaint proper. Thus, Plaintiff alleges continuing coercive and retaliatory violations <u>to this date</u> in violation of Title VII of the Civil Rights Act of 1964, as amended (Title VII).**

Finally, Plaintiff is confident that In this Civil trial, the jury weighing all of the relevant evidence in this case (*such as the preponderance of long-standing circumstantial evidence, email documentations and other corroborating evidences that will be additionally presented during the discovery phase of the trial*) is more likely to consider the allegations of Continuing Violations of retaliation and discrimination as true than not, since the preponderance of evidence in Civil cases is often said to characterize as 51% certainty.

**Therefore, *Pro Se* Plaintiff requests this Court to permit this Civil case to proceed forward so that the jury could decide whether the allegations of continuing reckless violations, under the Continuing Acts of Violations theory, is more likely true than not.**

14

Further, Title VII of the Civil Rights Act of 1964 explicitly prohibits an employer from retaliating against an employee who has "made a charge, testified, assisted or participated in" any charge of unlawful discrimination under the Act (42 U.S.C. § 2000e-3(a).

Respectfully submitted.

Date: 11/26/2015

Syed K. Rafi, PhD.
*Pro se* Plaintiff

**ATTACHMENT # 1**

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

## MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS
## PURSUANT TO 28 U.S.C. § 1915

Syed K. Rafi
_____,
Plaintiff(s),

v.

Yale University School of Medicine (YSM) &     Case No. _3:14-CV-01582-VAB_

YSM- Genetics Department Chairman, Dr. Richard P. Lifton
_____,
Defendant(s).


I request leave to commence this civil action without prepayment of fees, costs, or security therefor pursuant to 28 U.S.C. § 1915.   In support of my request, I submit the attached financial affidavit and state that:

(1)   I am unable to pay such fees, costs, or give security therefor.
(2)   I am entitled to commence this action against the defendant(s).
(3)   I request that the court direct the United States Marshal's Service to serve process.

_____
Original Signature

_SYED  K.  RAFI_
Name (print or type)
_P.O. Box 32302_
Street Address
_Kansas City, Mo. 64171-5302_
City          State          Zip Code
_(617) 913 2953_
Telephone Number

Rev.11/4/13

1

**ATTACHMENT # 2**

From: Syed Rafi <rafigene@yahoo.com>
To: "richard.lifton@yale.edu" <richard.lifton@yale.edu>
Cc: "richard.alpern@yale.edu" <richard.alpern@yale.edu>;
"peter.salovey@yale.edu" <peter.salovey@yale.edu>
Sent: Tuesday, November 4, 2014 11:14 AM
Subject: Strictly Confidential and Time-Sensitive Memorandum...

*The information in this e-mail is intended only for the person(s) to whom it is addressed, and it is
strictly confidential and personal.*

**Dear Chairman, Dr. Lifton,**

**With reference to my emails to you as well as to the Dean, Dr. Alpern, dated Feb. 11, 2014 (see below), I wish to inform you that to this date I have not received any response in order to amicably resolve my stranded and dire situation consequent to your stealth actions (understandably on behalf of the Yale School of Medicine) to deny Dr.Qumsiyeh a *prima facie* case of racial discrimination for terminating his position at YSM, and to hire back Dr. Pober with the plan to use me as a witness against Dr. Qumsiyeh (*given my confidential report to you upon your coercive request to do so in order to facilitate the formal completion of my ABMG training at YSM*), in case he either files a case of concealed retaliation and/or resorts to demonstrations along with his Middle Eastern followers at Yale and New Haven, given his political activism...**

**As I have indicated in my earlier emails to you as well as to Dr. Alpern (Dean), I have gone ahead and filed a complaint at the U.S.- EEOC, and consequently, I have also received the notice of right to sue from the EEOC.  Currently, I am in the process of filing a civil complaint against YSM and Dr.Richard Lifton (*Official Capacity*) as being responsible for the ceaseless and reckless violations of my Civil Rights ever since I left YSM after completing my ABMG clinical cytogenetics training, given the extensive emails-documentation and the extensive record of having been retaliated against at Harvard Medical School and around the nation since then.  I will be lodging my complaint with the Federal Department of Education's Office for Civil Rights as well.**

**However, I am still willing to yield to an amicably settlement before I proceed ahead with my case at the US District Court very soon.  I believe that such a resolution will be in the best interest of YSM and Dr.Lifton, given the recent (*New York Times front page article last Sunday*) wide spread anger at Yale Medical School over handling of harassment ( see:**
1.     Yale harass case stirs anger - Criticism over insensitivity
... article.wn.com/view/2014/11/03/Yale**harassment case stirs anger·within the Yale School of Medicine, TAMAR LEWIN New York Times.**

2.     Handling of Sexual Harassment Case Poses Larger Questions at
Yale www.nytimes.com/.../handling...larger-**questions-at-Yale.html** Nov 01,

**2014 · By TAMAR LEWIN  Inside. Yale ... Many professors remain angry. ... concerns about the climate for women at the medical school. Over all, Yale ....**

**If I proceed ahead with the civil complaint at the court, I will make sure that my plight draws attention of the press here and in the Middle East (see: http://forusa.org/blogs/frank-kromkowski/mazin-qumsiyeh-awarded-montanas-peace-seeker-year/12325).**

In my civil case, additional legally sound rationale for the continuing reckless retaliation and intentional discrimination will be presented.

**If I do not hear from either YSM or from Dr. Lifton within the next 15 days, I will certainly proceed ahead with the civil complaint, and will take it all the way... until justice is delivered!**

**Regards,**

**Syed K. Rafi, PhD.**
rafigene@yahoo.com

**Complaint Notes:**

**1.            Title VII of the Civil Rights Act of 1964 explicitly prohibits an employer from retaliating against**

 **an employee who has "made a charge, testified, assisted or participated in" any charge of unlawful**

**discrimination under the Act (42 U.S.C. § 2000e-3(a).**

**Recently, the first Circuit Allowed Retaliation Claim to Proceed Absent Direct Evidence of Decision Makers' Retaliatory Animus (See, *Travers v. Flight Services & Systems, Inc., No. 13-1438 (1st Cir. Dec. 12, 2013*); *and in Crawford v. Metropolitan Government of Nashville and Davidson County, Tennessee, No. 06-1595,* U.S. Supreme Court (January 26, 2009), Justices Hold Employee Response During An Internal Investigation Is "Protected Activity".**

**2.            Title VI regulations provide that "[n]o recipient or other person shall intimidate, threaten,**

**coerce, or discriminate against any individual for the purpose of interfering with any right or privilege**

**secured by [Title VI], or because he has made a complaint, testified, assisted, or participated in any manner**

**in an investigation, proceeding or hearing under this subpart." 28 C.F.R. § 42.108(e) (Department of Justice-**

Regulation.

3.          Furthermore, in accordance with the Core Anti-discrimination Principles in Recipient's (such as

Yale School of Medicine) of federal aid / grants, Yale University and its School of Medicine have voluntarily

 accepted the financial assistance in exchange for accepting the conditions of Title VI or Title IX's

 regulations, including regulations prohibiting retaliation.

4.          Both Title VI and Title IX Support a Private Right of Action Against Retaliation Based on

 Allegations of "Intentional Discrimination":  Even to the extent that courts should construe Title VI or Title IX

in light of Title VII, there is a strong argument in favor of implied rights of action against retaliation.

Title VI reaches private actors who are recipients of federal funds *(Pamela S. Karlen, Disarming the Private*

*Attorney General, 2003 U. ILL. L. REV. 183, 196 n.83 (2003).*

4.          U.S. Supreme Court Holds that Section 1981 Covers Retaliation Claims:

The U.S. Supreme Court agreed with the Seventh Circuit that section 1981 covers retaliation claims, including a retaliation claim based on one individual's concern for another's section 1981 rights. The Court's reasoning as follows: (a) in 1969, the Court's decision in *Sullivan v. Little Hunting Park, Inc., 396 U.S. 299 (1969)*, recognized that section 1981's sister statute, 42 U.S.C § 1982, included retaliation claims; (b) the Court has long interpreted sections 1981 and 1982 alike; (3) *in Patterson v. McLean Credit Union, 491 U.S. 164 (1989)*, the Court, without mention of retaliation, narrowed the scope of section 1981 by excluding post-contract-formation conduct, where retaliation would most likely be found; but subsequently, Congress passed the Civil Rights Action of 1991, which superseded Patterson and explicitly defined the scope of section 1981 to include post-contract-formation conduct; and (4) since 1991, the lower courts have uniformly interpreted section 1981 as encompassing retaliation actions.

5.          Additionally, Sullivan and Its Progeny Imply a Private Right of Action Against Retaliation:

The Supreme Court has consistently treated retaliation against civil rights complainants as a form of intentional discrimination. The Court has held that "retaliation offends the Constitution [because] it threatens to inhibit exercise of the protected right" and "is thus akin to an unconstitutional condition demanded

for the receipt of a government-provided benefit." *Crawford-El v. Britton, 523 U.S. 574, 588 n.10 (1998) (citations and internal quotation marks omitted); see also Chandamuri v. Georgetown Univ., 274 F. Supp. 2d 71, 81 (D.D.C. 2003) (discussing Court's approach to retaliation in Crawford-El)*.  Specifically, the Court has interpreted 42 U.S.C. §§ 1982 and 1983 to bar retaliation against complainants or litigants even though these statutes do not contain explicit prohibitions against retaliation.  See *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 277-87 1977)*.  In 1969, the Supreme Court in *Sullivan v. Little Hunting Park*, held that § 1982 implicitly prohibits retaliation.

6.          I INVOKE CONTINUING VIOLATIONS DOCTRINE:

The continuing violation doctrine permits a complainant  to pursue alleged discriminatory acts that occurred outside the statutory period under Title VII.  United States Supreme Court does recognize systemic violations, which involve the continuing policy or practice of discrimination on a company-wide basis, which policy or practice continues into the statutory period, as is alleged in this complaint.  Further, in *National Railroad Passenger Corp. (Amtrak) v. Morgan, 536 U.S. 101,122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002)*, the Supreme Court also left unresolved the issue of whether the continuing violation doctrine applies to systemic violations. However, continuing violation doctrine been accepted, to varying degrees, in employment litigations. The Ninth Circuit permitted to recover for acts outside the limitations period as long as the acts represented an ongoing unlawful employment practice. See, e.g., *Anderson v. Reno, 190 F.3d 930, 936 (9th Cir. 1999)*.  The Supreme Court affirmed the Ninth Circuit in part, reversed in part and remanded the matter. The Supreme Court defined the issue before it as "whether, and under what circumstances, a Title VII my may file suit on events that fall outside [the] statutory time period."

The Court, in a 5-4 split, viewed hostile environment claims differently than discrete discriminatory or retaliatory acts,
noting that "[t]heir very nature involves repeated conduct." The Court held that a hostile environment claim generally does not occur on any given day, but rather occurs over a number of days or even years and is based on the cumulative effects of several acts. For that reason, the Court ruled that as long as one act contributing to the hostile environment claim occurs within the statutory period, a Title VII my may recover for the entire period of that hostile environment.

Accordingly, I Invoke the Continuing Violations Doctrine / Continuing Claims Doctrine in my allegations of prolonged ceaseless and reckless retaliatory and coercive violations.

The Harvard Medical School affiliated Brigham and Women's Hospital, along with all other major HMS-affiliated primary hospitals, namely, the Children's Hospital Boston, the Massachusetts General Hospital, and Dana Farber Cancer Institute, as well as Boston University Medical Center and the professional clinical cytogenetics employers around the nation as well ceaselessly and recklessly

violated my Civil Rights due to the alleged retaliation and coercion by YSM through its Genetics Department Chairman, Dr. Richard Lifton (*directly, and indirectly through Dr. Cynthia Morton, Dr. Fred Bieber, Dr. Mira Irons, Dr. Richard Maas, and Dr. Barbara Pober*), for a prolonged period of time ever since I left YSM after completing my professional clinical cytogenetics training, in accordance with the Continuing Violations Doctrine as defined by the U.S. Supreme Court in *National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002)*.

7.          In my civil case, additional legally sound rationale for the continuing reckless retaliation and intentional discrimination will be presented.

_____

On Tuesday, February 11, 2014 8:14 PM, Syed Rafi <rafigene@yahoo.com> wrote:

Dear Dean, Dr. Alpern,
,
As I am in the process of preparing this case against Yale University School of Medicine which will be filed soon at the District Court in Boston, MA, I wish to confidentially bring this matter to your attention by forwarding a copy of my email memorandum (*attached herewith*) that was sent a couple of weeks ago to Dr. Richard Lifton, Chairman of the Genetics Department at Yale University School of Medicine.

Regards.

Syed K. Rafi, PhD.

**ATTACHMENT # 3**

## Orders on Motions
3:14-cv-01582-VAB Rafi v. Yale
University School of Medicine et
al

MOTREF,PROSE,TPS,WIG

### U.S. District Court

### United States District Court for the District of Connecticut

#### Notice of Electronic Filing

The following transaction was entered on 4/7/2015 at 5:28 PM EDT and filed on 4/7/2015
**Case Name:**     Rafi v. Yale University School of Medicine et al
**Case Number:**   3:14-cv-01582-VAB
**Filer:**
**Document Number:** 16(No document attached)

**Docket Text:**
**ORDER granting [14] Motion for Leave to Proceed in forma pauperis based
upon the financial information provided. Signed by Judge William I. Garfinkel
on 4/7/15. (Fucci, S)**


**3:14-cv-01582-VAB Notice has been electronically mailed to:**

**3:14-cv-01582-VAB Notice has been delivered by other means to:**

Syed K. Rafi
P.O. Box 32302
Kansas City, MO 64171

```
MIME-Version:1.0
From:CMECF@ctd.uscourts.gov
To:CMECF@ctd.uscourts.gov
Bcc:
--Case Participants: Judge William I. Garfinkel (carol_sanders@ctd.uscourts.gov,
cmecf_wig@ctd.uscourts.gov, i-wig@ctd.uscourts.gov, kathi_torres@ctd.uscourts.gov,
s-wig@ctd.uscourts.gov), Judge Victor A. Bolden (daniel_shin@ctd.uscourts.gov,
eric_lapre@ctd.uscourts.gov, i-vab@ctd.uscourts.gov, s-vab@ctd.uscourts.gov,
stewart_dearing@ctd.uscourts.gov, victor_bolden@ctd.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:<4142438@ctd.uscourts.gov>
Subject:Activity in Case 3:14-cv-01582-VAB Rafi v. Yale University School of Medicine
et al Order on Motion for Leave to Proceed in forma pauperis
```
Content-Type: text/html

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

## U.S. District Court

### United States District Court for the District of Connecticut

**Notice of Electronic Filing**

The following transaction was entered on 4/7/2015 at 5:28 PM EDT and filed on 4/7/2015
**Case Name:**      Rafi v. Yale University School of Medicine et al
**Case Number:**   3:14-cv-01582-VAB
**Filer:**
**Document Number:** 16(No document attached)

**Docket Text:**
**ORDER granting [14] Motion for Leave to Proceed in forma pauperis based upon the financial information provided. Signed by Judge William I. Garfinkel on 4/7/15. (Fucci, S)**

**3:14-cv-01582-VAB Notice has been electronically mailed to:**

**3:14-cv-01582-VAB Notice has been delivered by other means to:**

Syed K. Rafi
P.O. Box 32302

**ATTACHMENT # 4**

```
MIME-Version:1.0
From:CMECF@ctd.uscourts.gov
To:CMECF@ctd.uscourts.gov
Bcc:
--Case Participants: Judge Thomas P. Smith (barbara_sunbury@ctd.uscourts.gov,
cmecf_tps@ctd.uscourts.gov, i-tps@ctd.uscourts.gov, s-tps@ctd.uscourts.gov,
xjohn_wilsonx@ctd.uscourts.gov), Judge Victor A. Bolden (i-vab@ctd.uscourts.gov,
s-vab@ctd.uscourts.gov, victor_bolden@ctd.uscourts.gov), Judge Vanessa L. Bryant
(fidelis_basile@ctd.uscourts.gov, i-vlb@ctd.uscourts.gov,
joann_walker@ctd.uscourts.gov, john_johnson@ctd.uscourts.gov,
justin_engel@ctd.uscourts.gov, s-vlb@ctd.uscourts.gov,
vanessa_bryant@ctd.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:<4063201@ctd.uscourts.gov>
Subject:Activity in Case 3:14-cv-01582-VAB Rafi v. Yale University School of Medicine
et al Order of Transfer
Content-Type: text/html
```

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

U.S. District Court

United States District Court for the District of Connecticut

**Notice of Electronic Filing**

The following transaction was entered on 1/26/2015 at 11:45 AM EST and filed on 1/26/2015

| | |
|---|---|
| **Case Name:** | Rafi v. Yale University School of Medicine et al |
| **Case Number:** | <u>3:14-cv-01582-VAB</u> |
| **Filer:** | |
| **Document Number:** | 11(No document attached) |

**Docket Text:**
**ORDER OF TRANSFER. Case reassigned to Judge Victor A. Bolden for all further proceedings.**
**Signed by Clerk on 1/26/2015.(Walker, A)**

**3:14-cv-01582-VAB Notice has been electronically mailed to:**

**3:14-cv-01582-VAB Notice has been delivered by other means to:**

ATTACHMENT # 5

**PROCESS RECEIPT AND RETURN**

| PLAINTIFF | SYED K. RAFI, Ph.D. | COURT CASE NUMBER 3:14-CV-01582-VAB |
|---|---|---|
| DEFENDANT | YALE UNIVERSITY SCHOOL OF MEDICINE AND DR. RICHARD LIFTON, Chairman, Department of Genetics- "Official Capacity" | TYPE OF PROCESS COMPLAINT, NOTICE, AND WAIVER |

NAME OF INDIVIDUAL, COMPANY, CORPORATION, ETC. TO SERVE OR DESCRIPTION OF PROPERTY TO SEIZE OR CONDEMN

**SERVE AT** {
**DR. PETER SALOVEY, PRESIDENT, YALE UNIVERSITY**

ADDRESS (Street or RFD, Apartment No., City, State and ZIP Code)
**105 WALL STREET, NEW HAVEN, CT. 06520**

SEND NOTICE OF SERVICE COPY TO REQUESTER AT NAME AND ADDRESS BELOW

Syed K. Rafi, Ph.D.

PO Box 32302

Kansas City, MO. 64171

| | |
|---|---|
| Number of process to be served with this Form 285 | 1 |
| Number of parties to be served in this case | 2 |
| Check for service on U.S.A. | |

SPECIAL INSTRUCTIONS OR OTHER INFORMATION THAT WILL ASSIST IN EXPEDITING SERVICE (Include Business and Alternate Addresses, All Telephone Numbers, and Estimated Times Available for Service):

Fold

"Official Capacity"—as the ultimate responsible authority for the Yale University as a whole, and it's medical school.
Office Phone # 203 432 2550
Hours: 10 AM to 5 PM

Fold

Signature of Attorney other Originator requesting service on behalf of:   ☑ PLAINTIFF   ☐ DEFENDANT

TELEPHONE NUMBER rafigene@yahoo.com

DATE

**SPACE BELOW FOR USE OF U.S. MARSHAL ONLY-- DO NOT WRITE BELOW THIS LINE**

| I acknowledge receipt for the total number of process indicated. (Sign only for USM 285 if more than one USM 285 is submitted) | Total Process | District of Origin No. | District to Serve No. | Signature of Authorized USMS Deputy or Clerk | Date |
|---|---|---|---|---|---|

I hereby certify and return that I ☐ have personally served , ☐ have legal evidence of service, ☐ have executed as shown in "Remarks", the process described on the individual , company, corporation, etc., at the address shown above on the on the individual , company, corporation, etc. shown at the address inserted below.

☐ I hereby certify and return that I am unable to locate the individual, company, corporation, etc. named above (See remarks below)

Name and title of individual served (if not shown above)

☐ A person of suitable age and discretion then residing in defendant's usual place of abode

Address (complete only different than shown above)

| Date | Time | ☐ am ☐ pm |
|---|---|---|

Signature of U.S. Marshal or Deputy

| Service Fee | Total Mileage Charges including endeavors | Forwarding Fee | Total Charges | Advance Deposits | Amount owed to U.S. Marshal* or (Amount of Refund*) |
|---|---|---|---|---|---|
| | | | | | $0.00 |

REMARKS:

DISTRIBUTE TO:   1. CLERK OF THE COURT
2. USMS RECORD
3. NOTICE OF SERVICE
4. BILLING STATEMENT*: To be returned to the U.S. Marshal with payment, if any amount is owed. Please remit promptly payable to U.S. Marshal.
5. ACKNOWLEDGMENT OF RECEIPT

PRIOR EDITIONS MAY BE USED

Form USM-285
Rev. 11/13


FILE COPY

AO 398 (Rev. 01/09) Notice of a Lawsuit and Request to Waive Service of a Summons

# UNITED STATES DISTRICT COURT
### for the

**SYED K. RAFI, Ph.D.**

_____
*Plaintiff*

**YALE UNIVERSITY SCHOOL OF MEDICINE**
_____
*Defendant* **AND**
**DR. RICHARD LIFTON**, Chairman, Department of Genetics "Official Capacity"

)
)
)
)
)
)
)

Civil Action No. **3:14-CV-01582-VAB**

## NOTICE OF A LAWSUIT AND REQUEST TO WAIVE SERVICE OF A SUMMONS

To: **DR. PETER SALOVEY, PRESIDENT, YALE UNIVERSITY**

*(Name of the defendant or - if the defendant is a corporation, partnership, or association - an officer or agent authorized to receive service)*

**Why are you getting this?**

A lawsuit has been filed against you, or the entity you represent, in this court under the number shown above. A copy of the complaint is attached.

This is not a summons, or an official notice from the court. It is a request that, to avoid expenses, you waive formal service of a summons by signing and returning the enclosed waiver. To avoid these expenses, you must return the signed waiver within ____ days *(give at least 30 days, or at least 60 days if the defendant is outside any judicial district of the United States)* from the date shown below, which is the date this notice was sent. Two copies of the waiver form are enclosed, along with a stamped, self-addressed envelope or other prepaid means for returning one copy. You may keep the other copy.

**What happens next?**

If you return the signed waiver, I will file it with the court. The action will then proceed as if you had been served on the date the waiver is filed, but no summons will be served on you and you will have 60 days from the date this notice is sent (see the date below) to answer the complaint (or 90 days if this notice is sent to you outside any judicial district of the United States).

If you do not return the signed waiver within the time indicated, I will arrange to have the summons and complaint served on you. And I will ask the court to require you, or the entity you represent, to pay the expenses of making service.

Please read the enclosed statement about the duty to avoid unnecessary expenses.

I certify that this request is being sent to you on the date below.

Date: MAY 15, 2015

_____
*Signature of the attorney or unrepresented party*

**SYED K. RAFI, Ph.D.**
*Printed name*

**PO Box 32302**
**Kansas City, MO. 64171**
*Address*

**rafigene@yahoo.com**
*E-mail address*

617-913-2953
*Telephone number*

AO 399 (01/09) Waiver of the Service of Summons

# UNITED STATES DISTRICT COURT
### for the

**SYED K. RAFI, Ph.D.**
_____
*Plaintiff*

v.

**YALE UNIVERSITY SCHOOL OF MEDICINE**
_____
*Defendant* **AND**
**DR. RICHARD LIFTON, Chairman, Department of Genetics "Official Capacity"**

)
)
)
)
)
)

Civil Action No.   **3:14-CV-01582-VAB**

## WAIVER OF THE SERVICE OF SUMMONS

To:   **Syed K. Rafi, Ph.D.**
_____
*(Name of the plaintiff's attorney or unrepresented plaintiff)*

I have received your request to waive service of a summons in this action along with a copy of the complaint, two copies of this waiver form, and a prepaid means of returning one signed copy of the form to you.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from _____, the date when this request was sent (or 90 days if it was sent outside the United States). If I fail to do so, a default judgment will be entered against me or the entity I represent.

Date: **May 15, 2015**

**DR. PETER SALOVEY**
_____
*Printed name of party waiving service of summons*

_____
*Signature of the attorney or unrepresented party*

**Syed K. Rafi, Ph.D.**
_____
*Printed name*

**PO Box 32302**
**Kansas City, MO. 64171**
_____
*Address*

**rafigene@yahoo.com**
_____
*E-mail address*

**617 913 2953**
_____
*Telephone number*

### Duty to Avoid Unnecessary Expenses of Serving a Summons

Rule 4 of the Federal Rules of Civil Procedure requires certain defendants to cooperate in saving unnecessary expenses of serving a summons and complaint. A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

"Good cause" does *not* include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

If the waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

If you waive service, then you must, within the time specified on the waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court. By signing and returning the waiver form, you are allowed more time to respond than if a summons had been served.

ATTACHMENT # 6

AO 399 (01/09) Waiver of the Service of Summons

# UNITED STATES DISTRICT COURT
### for the
### District of Connecticut

| | | |
|---|---|---|
| Syed K. Rafi | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   14cv1582 (VAB) |
| Yale University School of Medicine  (YSM) , et al | ) | |
| *Defendant* | ) | |

## WAIVER OF THE SERVICE OF SUMMONS

To:  Syed K. Rafi
     *(Name of the plaintiff's attorney or unrepresented plaintiff)*

    I have received your request to waive service of a summons in this action along with a copy of the complaint, two copies of this waiver form, and a prepaid means of returning one signed copy of the form to you.

    I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

    I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

    I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from _____07/24/2015_____, the date when this request was sent (or 90 days if it was sent outside the United States).  If I fail to do so, a default judgment will be entered against me or the entity I represent.

Date:  8/21/15

    Yale University School of Medicine
    and Richard Lifton, M.D.
*Printed name of party waiving service of summons*

*Signature of the attorney or unrepresented party*

    Colleen N. David
*Printed name*

    Donahue, Durham & Noonan, P.C.
    741 Boston Post Road
    Guilford, CT 06437
*Address*

    cdavis@ddnctlaw.com
*E-mail address*

    (203) 458-9168
*Telephone number*

### Duty to Avoid Unnecessary Expenses of Serving a Summons

    Rule 4 of the Federal Rules of Civil Procedure requires certain defendants to cooperate in saving unnecessary expenses of serving a summons and complaint.  A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

    "Good cause" does *not* include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

    If the waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

    If you waive service, then you must, within the time specified on the waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court.  By signing and returning the waiver form, you are allowed more time to respond than if a summons had been served.