# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

SYED K. RAFI,                                        :
     Plaintiff                                   :
                                                    :
v.                                                   :    Case No. 3:14-CV-01582 (VAB)
                                                    :
YALE UNIVERSITY SCHOOL OF MEDICINE        :
and RICHARD P. LIFTON;                               :
     Defendants                                  :

## RULING ON DEFENDANTS' MOTION TO DISMISS

Dr. Syed Rafi ("Plaintiff"), a former employee of Yale University School of Medicine ("Yale"), brought this action against Yale and Dr. Richard Lifton, Chairman of the Department of Genetics (together "Defendants"). On September 15, 2016, the Court dismissed Dr. Rafi's initial Complaint without prejudice for failure to comply with the service requirements of Rule 4(m). Order, ECF No. 49. The following month, Dr. Rafi filed an Amended Complaint, re-opening this case. Am. Compl., ECF No. 51. Defendants now move to dismiss the Amended Complaint under Rule 12(b)(6) for failure to state a claim; in the alternative, they seek to strike various portions of the Amended Complaint under Rule 12(f). Mot. to Dismiss, ECF No. 56.

For the reasons that follow, the Defendants' Motion to Dismiss is **GRANTED** with prejudice, and Defendants' Motion to Strike is **DENIED AS MOOT**.[1]

## I.    FACTUAL ALLEGATIONS

Dr. Rafi is a former Cytogenetics Fellow at the Yale University School of Medicine ("Yale")[2]. Am. Compl. at 4, ECF No. 51. In or around 2001, Dr. Rafi began his employment

---

[1] The Court notes that, in addition to the regular briefing submitted by the parties, the Court also considered the arguments raised in Plaintiff's recent filing, originally identified as Appellant's Brief, but properly re-characterized by this Court as a "supplemental brief." ECF No. 76.

[2] Cytogenetics is defined as the branch of biology linking the study of genetic inheritance with the study of cell structure. *See* Random House Dictionary, Random House, Inc. 2017, *available at* http://www.dictionary.com/browse/cytogenetics.

with Yale as a clinical cytogenetics trainee under the supervision of Dr. Richard Lifton, Chairman of the Genetics Department at the Yale University School of Medicine. *Id.* at 3-5. During his time as a cytogenetics trainee, Dr. Rafi worked in the laboratory of Dr. Mazin Qumsiyeh, a Yale employee and laboratory director, who was substantially involved in political activism about issues affecting Palestine and Israel. *Id.* at 8-11. Dr. Rafi alleges that Yale wanted to terminate Dr. Qumsiyeh, and that, as a means to help Yale avoid a potential employment discrimination complaint from Dr. Qumsiyeh, Dr. Lifton pressured Dr. Rafi to file a written complaint against Dr. Qumsiyeh. *Id.* At Dr. Lifton's request, Dr. Rafi provided a confidential statement for Yale describing Dr. Qumsiyeh's management of the Clinical Cytogenetics Laboratory and his alleged actions to pressure Dr. Rafi to participate in political activism. Qumsiyeh Compl., Am. Compl. Ex. 4, ECF No. 51-2.

According to the Amended Complaint, Dr. Lifton "coercively demanded" this written complaint, and Dr. Rafi "yield[ed] to Dr. Lifton's coercion" by providing it. Am Compl. at 11, ECF No. 51. The Amended Complaint does not allege that Dr. Lifton demanded this written complaint because of Dr. Rafi's race or national origin; rather, Dr. Rafi states that he was asked to write this complaint "since Plaintiff had worked and trained at that clinical diagnostic cytogenetics laboratory that was abusively directed and exploited by Dr. Qumsiyeh…." *Id.*

Dr. Rafi's written complaint states that Dr. Qumsiyeh was significantly involved in "Palestinian political activism" during his time as Director of the Clinical Cytogenetics Laboratory in which Dr. Rafi worked. Qumsiyeh Compl. at 1, Am. Compl. Ex. 4, ECF No. 51-2. According to the complaint, Dr. Qumsiyeh interfered with Dr. Rafi's application to undergo an American Board of Medical Genetics ("ABMG") Medical Genetics Training Program at the Boston University School of Medicine because he wanted Dr. Rafi to complete the training at

Yale instead.  *Id.* at 1-2.  After Dr. Rafi began the ABMG training program at Yale, he claims that Dr. Qumsiyeh "did not wait for too long to indirectly pressure [him] to attend his Palestinian Political meetings" and sent multiple unsolicited emails each day to Dr. Rafi's inbox regarding this political activity.  *Id.*

When Dr. Rafi refused to participate in these activities, he alleges that Dr. Qumsiyeh became "rude and authoritative."  *Id.*  According to Dr. Rafi, Dr. Qumsiyeh required him to complete additional diagnostic laboratory work until 10 p.m. to compensate for time spent on ABMG training activities, required him to resign from his position as a full time technologist and accept the position of "temporary" technologist, which did not include benefits, and attempted to extend his training period even after he had already completed the required ABMG training program in order to compel him to perform additional unpaid research work on behalf of the laboratory.  *Id.* at 3-4.

Dr. Rafi eventually left Yale and moved to Boston, Massachusetts.  *Id.* at 13.  According to Dr. Rafi, Dr. Lifton and Yale unlawfully interfered with his efforts to obtain employment at various institutions in the Boston area, including at Harvard Medical School, Brigham and Women's Hospital, Massachusetts General Hospital, and others.  *Id.* at 13-22.  Dr. Rafi specifically alleges that Dr. Lifton "colluded" with Dr. Cynthia Morton, Director of Clinical Cytogenetic Laboratories at Brigham and Women's Hospital and Harvard Medical School, to ensure that he was not hired.  *Id.*  Dr. Rafi claims that this interference was in order for Dr. Lifton to employ him at Yale, so that he could testify as a witness against Dr. Qumsiyeh.  *Id.*  Dr. Rafi never alleges that Dr. Qumsiyeh filed an employment discrimination case against Yale, however, nor does he specify what sort of testimony he was being asked to give.

Dr. Rafi states that he was eventually able to obtain lower-level roles at Harvard Medical School as a molecular genetics research associate and later as a manager at a core service laboratory. *Id.* at 16-17. He alleges that Dr. Barbara Pober, who left Yale around the same time as Dr. Qumsiyeh and who worked as an Associate Professor at Massachusetts General Hospital and Harvard Medical School, participated in "influence peddling from within HMS" to ensure that those positions were terminated. *Id.* According to Dr. Rafi, Dr. Pober's husband was an influential Yale professor at the time of these alleged actions; however, he does not name Dr. Pober as a Defendant in this action. *Id.* at 15. Each time Dr. Rafi's employment in Boston was terminated, he was allegedly encouraged to apply to Yale. *Id.* at 16-17. Dr. Rafi also alleges that, although Yale also wanted Dr. Pober, who is Jewish and female, to return to Yale to testify against Dr. Qumsiyeh, they did not engage in similar retaliatory acts as to her following her employment with Yale.

The Amended Complaint briefly includes an additional allegation that Defendants' interference with Dr. Rafi's employment efforts was also caused, in part, by a separate Title VII lawsuit that Dr. Rafi had previously brought against the U.S. Department of Health and Human Services ("HHS"). *Id.* at 25-27. In this lawsuit, Dr. Rafi alleged that the National Institute of Health ("NIH") discriminated against him, while he was working as a volunteer researcher. *Id.* Dr. Rafi claims that Dr. Lifton had a "special bond" with the director of the NIH at the time and that Dr. Rafi's previous Title VII complaint was "open and readily available," suggesting that Dr. Lifton knew about this complaint at the time of the allegedly retaliatory actions. *Id.* The Amended Complaint indicates that Dr. Rafi initiated this previous lawsuit in 2002, which would have been during his employment with Yale as a cytogenetics trainee. *Id.*

Dr. Rafi claims that Dr. Lifton's interference in his job applications in the field of cytogenetics continues to this day.  He claims that Yale's and Dr. Lifton's actions were primarily in retaliation for Dr. Rafi's refusal to work for Yale and testify against Dr. Qumsiyeh, and he claims that these acts violated the provisions of Title VI, Title VII, Title IX, 42 U.S.C. § 1981 and 42 U.S.C. § 1983.

## II.    STANDARD OF REVIEW

When considering a motion to dismiss for failure to state a claim under Fed R. Civ. P. 12(b)(6), the court must accept as true all factual allegations in the complaint and draw all possible inferences from those allegations in favor of the plaintiff.  *See York v. Ass'n of the Bar of the City of New York*, 286 F.3d 122, 125 (2d Cir.), *cert. denied*, 537 U.S. 1089 (2002).  The proper consideration is not whether the plaintiff ultimately will prevail, but whether the plaintiff has stated a claim upon which relief may be granted such that he should be entitled to offer evidence to support his claim.  *See id.* (citation omitted).  Courts considering motions to dismiss under Rule 12(b)(6) generally "must limit [their] analysis to the four corners of the complaint," though they may also consider documents that are "incorporated in the complaint by reference." *Kermanshah v. Kermanshah*, 580 F.Supp.2d 247, 258 (S.D.N.Y. 2008).

In reviewing a complaint under Rule 12(b)(6), the court applies "a 'plausibility standard,'" which is guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  First, the requirement that the court accept as true the allegations in a complaint "is inapplicable to legal conclusions." *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  Second, to survive a motion to dismiss, the complaint must state a plausible claim for relief. *Id.* at 679.  Determining whether the complaint states a plausible claim for relief is "'a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

### III.    DISCUSSION

Defendants seek dismissal of Dr. Rafi's Complaint under Rule 12(b)(6) on the following grounds: (1) Dr. Rafi fails to state a claim under Title VII because he failed to exhaust his administrative remedies, his claims are untimely, and they do not sufficiently allege adverse action; (2) Dr. Rafi's Title VI claims are time-barred and are improperly alleged against Dr. Lifton; (3) Dr. Rafi fails to allege any gender-based discrimination as required to state a claim under Title IX; (4) Dr. Rafi's claims under 42 U.S.C. § 1981 ("Section 1981") are time-barred; and (5) Dr. Rafi does not adequately allege state action, as required to state a claim under 42 U.S.C. § 1983 ("Section 1983"). Alternatively, Defendants seek a more definite statement under Rule 12(e) as well as to strike various portions of the Complaint under Rule 12(f).

### A.  Claims against Dr. Lifton

The Amended Complaint asserts Title VII retaliation claims against Yale and Dr. Lifton, claiming that both Defendants retaliated against him for "refus[ing] to serve as a defense witness against Dr. Qumsiyeh" by interfering with his efforts to gain employment elsewhere. Am. Compl. at 2, ECF No. 51. The Amended Complaint also similarly asserts Title VI claims against Dr. Lifton as well as claims under Title IX. All of the claims against Dr. Lifton are dismissed.[3]

---

[3] Dr. Rafi also names Dr. Lifton as a Defendant along with Yale when outlining his claims under Sections 1981 and 1983. Those two claims are dismissed on other grounds, however, so the Court does not analyze those claims separately as to Dr. Lifton.

### 1. Title VII

Defendants argue that all Title VII claims brought against Dr. Lifton should be dismissed, as only employers, not individuals, can be liable under Title VII.  Def. Mem. in Supp. at 11, ECF No. 56-1.  The Court agrees.

The Second Circuit has established that "individuals are not subject to liability under Title VII."  *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 221 (2d Cir. 2004) (internal quotations and marks omitted).  Accordingly, any Title VII claims asserted against Dr. Lipton individually are dismissed, and the Court considers Dr. Rafi's Title VII claims only as to Yale.

### 2. Title VI

In addition to his claims under Title VII, Dr. Rafi asserts that Dr. Lifton violated his rights under Title VI, by interfering with his re-employment efforts in retaliation for his refusal to work for Yale and testify against Dr. Qumsiyeh.  Defendants argue that these claims cannot be asserted against Dr. Lifton, as Title VI is only applicable to programs receiving federal assistance.  The Court agrees with Defendants.

Title VI of the Civil Rights Act of 1964 protects employees' right to be free from race-based or national origin-based discrimination on the part of programs that receive federal assistance.  42 U.S.C. § 2000d ("No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, or denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.").  Dr. Lifton cannot be a defendant in a Title VI action, as Title VI only applies to entities that receive federal financial assistance. *See Milione*, 950 F.Supp.2d at 708-709 ("The proper defendant in a Title VI action 'is the entity that receives federal financial assistance, not

an individual.'") (quoting *Kelly v. Rice*, 375 F.Supp.2d 203, 208 (S.D.N.Y. 2005)).  Accordingly, all Title VI claims against Dr. Lifton are dismissed.

### 3. Title IX

Dr. Rafi alleges that Dr. Lifton violated the sex discrimination provisions of Title IX through the same conduct alleged in connection with his other claims.  Defendants claim that Title IX claims cannot be brought against individual Defendants, thus Dr. Rafi's claims against Dr. Lifton should be dismissed.  The Court agrees with Defendants.

Only federally funded educational institutions can be defendants in a Title IX action. *See Davis Next Friend LaShonda D. v. Monroe County Bd. of Educ.*, 526 U.S. 629, 363 (1999) (recognizing dismissal of claims against individual defendants "on the ground that only federally funded educational institutions are subject to liability in private causes of action under Title IX"). Accordingly, Dr. Rafi's claims against Dr. Lifton are dismissed.

### B.  Claims Against Yale

Dr. Rafi asserts that Yale violated Title VII, Title VI, and Title IX.  He also asserts that both Yale and Dr. Rafi violated Section 1981 and Section 1983.  For the various reasons discussed below, all of these claims are dismissed.

### 1. Title VII

Defendants seek dismissal of Dr. Rafi's Title VII retaliation claims against Yale, arguing that: (a) Dr. Rafi failed to exhaust administrative remedies before bringing this lawsuit in federal court; (b) his claims are untimely; and (c) he failed to adequately allege adverse action on the part of Defendants.  The Court concludes that Dr. Rafi did exhaust his administrative remedies and has properly alleged adverse action; however, aspects of his Title VII claims are untimely,

and his Title VII retaliation claims ultimately fail because of his inability to allege participation

in protected activity as required for a *prima facie* retaliation case.

### a.  Exhaustion of Administrative Remedies

Under Title VII, an individual may not bring a case in federal court until after he or she

has filed a timely administrative complaint with the Equal Employment Opportunities

Commission ("EEOC").  *See McPherson v. New York City Dept. of Educ.*, 457 F.3d 211, 213-14

(2d. Cir. 2006) ("A private plaintiff under Title VII must satisfy two conditions before

commencing suit in federal court.  First, the complainant must file timely administrative charges

with the EEOC… Second, the complainant must await dismissal of the administrative charge (or

a failure to act)… Such notification is called a right-to-sue letter because the notification is a

prerequisite to suit…."); *see also Francis v. City of New York,* 235 F.3d 763, 768 (2d. Cir. 2000)

("[E]xhaustion of administrative remedies through the EEOC stands as an essential element of

Title VII's statutory scheme … and one with which defendants are entitled to insist that plaintiffs

comply.") (internal quotations and marks omitted).

Neither the Amended Complaint nor Dr. Rafi's briefing specifies whether Dr. Rafi ever

filed a complaint with the EEOC before initiating this lawsuit in federal court, nor do they

reference a right-to-sue letter issued by the EEOC in advance of this lawsuit.[4]  Yale claims that it

was never notified of any such administrative complaint, and urges dismissal of Dr. Rafi's Title

VII claims on this basis.  *See Spencer v. Duncaster, Inc*., 54 F. Supp. 3d 171, 175 (D. Conn.

2014) ("It is true that the exhaustion of administrative remedies, including obtaining an EEOC

---

[4] Dr. Rafi's briefs in response to Defendants' motion to dismiss reveal a misunderstanding of the exhaustion of administrative remedies.  *See* Pl. Mem. in Opp. at 6, ECF No. 62 ("Plaintiff's oral complaint to Dr. Richard Lifton… did not lead to any administrative remedy… Therefore, it is invalid to suggest that Plaintiff failed to exhaust his administrative remedies….").  Dr. Rafi's language suggests that Defendants, rather than Dr. Rafi himself or an administrative agency, were required to provide some sort of administrative remedy.  This is incorrect, and does not relieve Dr. Rafi of the EEOC filing requirement in the Title VII context.

right-to-sue letter, is a 'precondition to bringing a Title VII claim in federal court,' … and it is equally true that a suit initiated by a plaintiff who has not obtained an EEOC right-to-sue letter might well be subject to dismissal upon a proper motion.") (quoting *Francis*, 235 F.3d at 768); *Mulero v. Connecticut, Dep't of Educ.*, 253 F.R.D. 33, 39 (D. Conn. 2008) (dismissing Title VII claims for failure to exhaust administrative remedies, despite inclusion of a copy of EEOC letter with complaint, explaining that "[t]he fact that Mulero fails to address his exhaustion in his Amended Complaint further complicates matters as it makes it impossible for the court to decipher if he has in fact exhausted his administrative remedies.").

In advance of oral argument on Defendants' motion to dismiss, the Court issued an order inviting Dr. Rafi to provide an explanation regarding whether he complied with the administrative exhaustion requirements of Title VII.  Order, ECF No. 72.  In response to the Court's order, Dr. Rafi submitted a memorandum and supporting documentation confirming that he filed a complaint with the Massachusetts Commission against Discrimination in mid-July of 2014 and that a notice from the EEOC releasing jurisdiction was mailed to him on July 23, 2014. Pl. Not., ECF No. 73.  He initiated this lawsuit on October 24, 2014, ninety-three (93) days after the EEOC notice of right to sue was mailed.  In his administrative complaint, Dr. Rafi makes several of the same allegations asserted in this action.  Mass. Compl., Pl. Not. Ex. 2, ECF No. 73. However, he describes his protected activity as pertaining solely to his refusal to return to Yale to serve as a "defense witness" against Dr. Qumsiyeh, and he makes no mention of his previous filing of a discrimination lawsuit against HHS and the NIH.  *Id.*

Title VII requires plaintiffs to file a complaint within ninety (90) days of receiving a right-to-sue letter from the EEOC.  *Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 36 (2d Cir. 2011) ("[T]he 90–day limitations period for bringing an employment

discrimination claim begins to run when a right-to-sue letter is first received either by the claimant or by the claimant's counsel."). Dr. Rafi has not specified when he actually received the EEOC letter; however, the Second Circuit has long held that a letter is presumed received three days after its mailing. *See Johnson v. St. Barnabas Nursing Home*, 368 F.App'x 246, 248 (2d Cir. 2010) ("Absent sufficient evidence to the contrary, it is presumed that a plaintiff received his or her right to sue letter three days after its mailing"); *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 526 (2d Cir. 1996) ("[W]e would not regard the presence of a self-serving date-of-receipt notation ... as evidence rebutting the presumption that the letter was received three days after its typewritten date, unless the claimant also presented an affidavit or other admissible evidence of receipt on the noted date."). Accordingly, the EEOC letter in this case is presumed received by July 26, 2014, meaning that Dr. Rafi's initiation of this lawsuit on October 24, 2014 was properly within the ninety-day window required for Title VII claims.

Defendants insist that they never received a copy of Dr. Rafi's underlying administrative complaint before he initiated this lawsuit. Def. Resp. to Pl. Not., ECF No. 74. Nonetheless, the submissions filed by Dr. Rafi confirm that he did exhaust his administrative remedies before initiating a timely lawsuit under Title VII. Accordingly, the Court concludes that Dr. Rafi's Title VII claims against Yale are properly before the Court.

### b. Timeliness

Defendants also assert a statute of limitations defense with respect to several aspects of Dr. Rafi's Title VII claims. According to Defendants, those aspects of Dr. Rafi's Title VII claims that take place during the context of Dr. Rafi's employment are time-barred because they exceed the applicable statute of limitations. Most of the conduct detailed in the Amended Complaint relates back to events that occurred during Dr. Rafi's employment before 2003 and

his unsuccessful re-employment efforts shortly thereafter, thus falling well outside the statutory limitation period. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002) ("[A] Title VII plaintiff raising claims of discrete discriminatory or retaliatory acts must file his charge within the appropriate time period—180 or 300 days—set forth in 42 U.S.C. § 2000e–5(e)(1).").

In their reply brief, Defendants specify that their timeliness argument applies only to those claims regarding alleged discrimination during Dr. Rafi's employment at Yale. Defs. Reply Br. at 2-3, ECF No. 65. These aspects of the Amended Complaint are distinct from the majority of Dr. Rafi's allegations, which claim that Yale engaged in a pattern of interfering with Dr. Rafi's employment efforts from the time of his departure from Yale up until the time of this lawsuit. As this conduct allegedly began around 2003, most of this conduct falls outside of the statutory limitations period.

Dr. Rafi claims that the "continuing violation" doctrine ensures his ability to bring all of his claims, as he has alleged that Defendants' interference with his employment at other institutions continued up until the date of the filing of his federal complaint. "The continuing violation exception applies when there is evidence of an ongoing discriminatory policy or practice, such as use of discriminatory seniority lists or employment tests. Although discrete incidents of discrimination that are not the result of a discriminatory policy or practice will not ordinarily amount to a continuing violation, … 'where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice,' a continuing violation may be found[.]" *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 713 (2d Cir. 1996) (quoting *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994)).

Dr. Rafi claims that Yale engaged in a continuing violation through their discriminatory practice of blocking his efforts at employment outside of Yale. "If a continuing violation is shown, a plaintiff is entitled to have a court consider all relevant actions allegedly taken pursuant to the employer's discriminatory policy or practice, including those that would otherwise be time barred." *Id.* (citing *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993), *cert. denied,* 511 U.S. 1052 (1994)).

Defendants are correct that any claims pertaining to Dr. Rafi's training and employment while at Yale are time-barred. *See Nat'l R.R. Passenger Corp.*, 536 U.S. at 105 (the Title VII statute of limitations "precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period"). Nonetheless, while the Amended Complaint is relatively unspecific regarding allegedly retaliatory conduct that occurred within the statutory period, Defendants do not move to dismiss any of the retaliation claims on this basis, and Dr. Rafi does allege that Yale engaged in a consistent pattern of conduct that appears to fall within the continuing violation doctrine. Accordingly, the Court considers Dr. Rafi's Title VII claim only as to Dr. Rafi's claims of interference with his employment from his departure up until the filing of his underlying administrative complaint. Any claims that he was subjected to discriminatory treatment while at Yale are dismissed as untimely.

### c.  Adverse Action

Defendants also assert that, although Dr. Rafi's Title VII retaliation claims may not all be time-barred, all Title VII claims nonetheless fail under Rule 12(b)(6) because Dr. Rafi does not allege any actual adverse action on the part of Defendants. The Court disagrees.

"To establish a prima facie case of unlawful retaliation under Title VII, 'an employee must show that (1) [ ]he was engaged in protected activity; (2) the employer was aware of that

activity; (3) the employee suffered a materially adverse action; and (4) there was a causal

connection between the protected activity and that adverse action.'" *Rivera v. Rochester

Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 24–25 (2d Cir. 2014) (quoting *Lore v. City of

Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012)).  "The scope of actions that may be materially

adverse for purposes of a Title VII retaliation claim is broader than those actions prohibited by

Title VII's anti-discrimination provisions; the latter apply to the terms and conditions of

employment, while the former 'anti-retaliation protection is broader and extends beyond

workplace-related or employment-related retaliatory acts and harm.'" *Bowen-Hooks v. City of

N.Y.*, 13 F. Supp. 3d 179, 224–25 (E.D.N.Y. 2014) (quoting *Hicks v. Baines*, 593 F.3d 159, 165

(2d Cir. 2010) (internal marks and quotations omitted)).

 The Amended Complaint repeatedly claims that Yale, through Dr. Lifton, used its

influence in interactions with other leaders in the field of genetics to ensure that Dr. Rafi was not

hired elsewhere following his employment at Yale.  *See* Am. Compl. at 3-4, 13-14, 16-20, ECF

No. 51.  Taking these allegations as true, as is required at this early stage, these statements allege

sufficiently specific adverse action for purposes of a Title VII retaliation claim.  *See, e.g.*

*Wanamaker v. Columbian Rope Co*., 108 F.3d 462, 466 (2d Cir. 1997) (noting that Title VII

"protects individuals from actions injurious to current employment or the ability to secure future

employment."); *Corbett v. Napolitano*, 897 F. Supp. 2d 96, 112 (E.D.N.Y. 2012) ("Under

Second Circuit precedent, a former employer's refusal to give positive references or circulation

of negative references to a plaintiff's potential future employer qualify as adverse employment

actions disadvantaging the plaintiff.").  At this early stage of the proceedings, dismissal is not

warranted on this ground.

### d.  Protected Activity

Allegations constituting an adverse action, however, without more, are not sufficient to state a *prima facie* retaliation claim under Title VII.  Although Dr. Rafi has sufficiently alleged adverse action on the part of Yale, Dr. Rafi's allegations regarding Yale's motivations do not constitute "protected activity" for purposes of Title VII; thus, his Amended Complaint does not state an actionable Title VII claim.

Participation in "protected activity" is a required element of a prima facie case under Title VII.  *See Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 24–25 (2d Cir. 2014).  "Title VII forbids an employer from retaliating against an employee because []he 'has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.'" *Tucker v. Journal Register E.*, 520 F. Supp. 2d 374, 382 (D. Conn. 2007) (quoting 42 U.S.C. § 2000e-3(a)); *see also Littlejohn v. City of N.Y.*, 795 F.3d 297, 318 (2d Cir. 2015) ("[I]f an employee…actively 'support[s]' other employees in asserting their Title VII rights or personally 'complain[s]' or is 'critical' about the 'discriminatory employment practices' of her employer, that employee has engaged in a protected activity under § 704(a)'s opposition clause.") (quoting *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990)).

### i.    Dr. Qumsiyeh Complaint

The alleged "protected activity" that forms the basis for Dr. Rafi's Title VII retaliation claims is a written complaint against his former supervisor, Dr. Qumsiyeh, and Dr. Rafi's subsequent refusal to continue working at Yale.  Am. Compl. at 2, ECF No. 51.  Based on the language of the written complaint against Dr. Qumsiyeh and the Amended Complaint, however,

the alleged "protected activity" is entirely unrelated to race, national origin, religion, or any of the other protected classes under Title VII. *See* 42 U.S.C. § 2000e-2 (prohibiting discrimination "because of… race, color, religion, sex, or national origin"). Without some connection to these protected grounds, Dr. Rafi cannot plausibly claim to have participated in activities that are recognized as protected by Title VII, and his Title VII retaliation claim cannot succeed.

The Amended Complaint makes occasional references to Dr. Rafi's Southeast Asian heritage and his Muslim faith; however, the allegations contained in the Amended Complaint focus exclusively on conduct that has no connection to Dr. Rafi's race, national origin, or religion. The written complaint Dr. Rafi submitted against Dr. Qumsiyeh during his employment specifies that his disagreements with Dr. Qumsiyeh stemmed from Dr. Qumsiyeh's efforts to pressure lab employees to participate in political activism, as well as his alleged mistreatment of Dr. Rafi, after he refused to become involved in Dr. Qumsiyeh's political activities. Nothing in the letter or in the Amended Complaint pertains to Dr. Rafi's or Dr. Qumsiyeh's race, ethnicity or religion, nor are there any allegations of threats or discrimination against Dr. Rafi or Dr. Qumsiyeh on the basis of their race, ethnicity or religion.

Dr. Rafi repeatedly refers to concerns on the part of Yale University regarding a potential employment discrimination case on the part of Dr. Qumsiyeh. Am. Compl. at 10, 14, 24, ECF No. 51. However, Dr. Rafi does not allege that any such employment discrimination case was ever initiated, nor does he claim to have participated in support of or in opposition to any such discrimination lawsuit, much less a charge of discrimination filed with a federal or state administrative agency. Thus, these factual allegations fail to give rise to the statutory protections for those who participate in discrimination cases on behalf of third parties. *See* 42 U.S.C. § 2000e-3 (prohibiting discrimination for having "made a charge, testified, assisted, or participated

in any manner in an investigation, proceeding, or hearing under this subchapter"). Under Second

Circuit case law, "Title VII only protects the specific act of *participating* in administrative

proceedings…." *Deravin v. Kerik,* 335 F.3d 195, 205 (2d Cir. 2003) (holding that even

"defending oneself against charges of discrimination – to the extent that such defense involves

actual participation in a Title VII proceeding or investigation – is 'protected activity'").

Dr. Rafi's refusal to work for Yale and serve as a "defense witness" against Dr.

Qumsiyeh in a hypothetical lawsuit – that, as Dr. Rafi's own internal complaint against Dr.

Qumsiyeh makes clear, did not involve allegations of discrimination based on race, ethnicity or

religion – does not constitute "protected activity" under the statue. Thus, Dr. Rafi fails to state a

claim of retaliation under Title VII based on his refusal to work at Yale and/or his refusal to

continue testifying against Dr. Qumsiyeh, and this claim is properly dismissed under Rule

12(b)(6).

### ii.    Previous Title VII Lawsuit

The Amended Complaint proposes a second basis for Dr. Rafi's Title VII retaliation

claim: he alleges that, while he was employed at Yale, he filed a Title VII lawsuit against a

separate employer, the U.S. Department of Health and Human Services ("HHS lawsuit"), and

that Yale's conduct towards him was also in retaliation for filing that lawsuit. Am. Compl. at 25-

27, ECF No. 51. The underlying administrative complaint that forms the basis for this lawsuit

does not make any mention of that event. *See* Mass. Compl., Pl. Not. Ex. 2, ECF No. 73. Thus,

Dr. Rafi did not exhaust his administrative remedies with respect to this aspect of his retaliation

claim.

In Dr. Rafi's supplemental brief, ECF No. 76, he argues that his Title VII claim here

should not be limited to the claims raised in his administrative complaint, and he also claims that

the HHS lawsuit is "reasonably related" to the discrimination alleged in the administrative

complaint.  Pl. Supp. Br. at 3-4, ECF No. 76.  Conduct that is not specifically alleged in an

administrative complaint may be reviewable in a subsequent federal lawsuit where the

allegations are "reasonably related" to those raised in the underlying administrative complaint.

*See Mathirampuzha v. Potter*, 548 F.3d 70, 76 (2d Cir. 2008) ("The exhaustion requirement is

relaxed under the 'reasonably related' doctrine if, *inter alia*, 'the conduct complained of would

fall within the scope of the EEOC investigation which can reasonably be expected to grow out of

the charge of discrimination.'") (quoting *Terry v. Ashcroft*, 336 F.3d 128, 151 (2d Cir. 2003)).

Here, however, the HHS lawsuit is not "reasonably related," but rather is entirely separate

from the protected activity alleged in the administrative complaint.  The HHS lawsuit arose out

of a separate employment relationship; it had no direct connection to any of the named

Defendants, and it had nothing to do with any of the allegations described with respect to Dr.

Qumsiyeh.  *See* Am. Compl. at 25-27, ECF No. 51.  If the EEOC were to initiate an investigation

based on the administrative complaint filed by Dr. Rafi in connection with this case, Dr. Rafi's

HHS lawsuit and its causal connection to the retaliatory conduct alleged on the part of Yale

would not have fallen within the scope of that investigation.  *See Mathirampuzha*, 548 F.3d at

76.  Accordingly, Dr. Rafi's HHS lawsuit cannot serve as the basis for the Title VII retaliation

claims now before this Court, and Dr. Rafi has failed to allege any protected activity recognized

by Title VII.  All claims under Title VII are properly dismissed under Rule 12(b)(6).

## 2. Title VI

In addition to his claims under Title VII, Dr. Rafi asserts that Yale violated his rights

under Title VI by interfering with his re-employment efforts in retaliation for his refusal to work

for Yale and testify against Dr. Qumsiyeh.  Defendants argue that some of Dr. Rafi's retaliation

claims under Title VI should be dismissed because they are untimely, while Dr. Rafi argues that all aspects of his claims are covered by the continuing violation doctrine. The Court concludes, however, that even if the continuing violation doctrine did apply, all aspects of Dr. Rafi's Title VI claims are properly dismissed for failure to allege participation in protected activity that is recognized by Title VI.

### a. Timeliness

The applicable statute of limitations for Title VI claims is three years. *See Karlen ex rel. J.K. v. Westport Bd. of Educ.*, 638 F.Supp.2d 293, 300 (D. Conn. 2009) ("Connecticut courts apply Connecticut's three-year statute of limitations for actions sounding in tort … to civil rights actions, including actions brought under Section 1983 and Title VI."). Dr. Rafi's Title VI retaliation claims, like his Title VII retaliation claims, date back to before 2003, well outside the applicable statutory limitations period.

Dr. Rafi insists that the continuing violation doctrine described above in connection with Title VII covers all of his retaliation claims. However, courts in this Circuit have noted that "it is questionable whether the [continuing violation] doctrine applies to claims brought under Title VI… Whereas Title VII acts as an outright prohibition applicable to all employers, aiming centrally to compensate victims of discrimination, Title VI conditions an offer of federal funding on a promise by the recipient not to discriminate. Title VI is therefore contractual in nature, and a drastic expansion of its limitations period might exceed the goals of the statute." *Martin v. State Univ. of New York*, 704 F.Supp.2d 202, 234 (E.D.N.Y. 2010) (citations omitted); *see also Mussington v. St. Luke's-Roosevelt Hosp. Ctr.*, 824 F.Supp.427, 433 (S.D.N.Y. 1993), *aff'd*, 18 F.3d 1033 (2d Cir. 1994) ("To show a continuing violation, plaintiffs must show a sequence of related discriminatory acts, at least one of which occurred during the limitations period, or a

discriminatory system maintained during that period… Moreover, 'courts of this circuit consistently have looked unfavorably on continuing violation arguments.'") (quoting *Blesedell v. Mobil Oil Co*., 708 F.Supp. 1408, 1415 (S.D.N.Y. 1989)).

Dr. Rafi generally alleges that Yale's retaliatory conduct continued to the date of filing the instant lawsuit, and he insists that this conduct was a consistent pattern and practice on the part of Yale.  Beyond a description of several job applications Dr. Rafi made in the years immediately following his employment at Yale, however, Dr. Rafi provides little information regarding specific retaliatory actions on the part of Yale that would allow the Court to construe a consistent pattern of misconduct leading up to the date of this lawsuit.  *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").  Nonetheless, he does allege several discrete incidences of interference with his employment efforts between 2011 and 2014, which fall within the applicable three-year statutory period.  Am. Compl. at 15, 18, 21, ECF No. 51.

The Court concludes that Dr. Rafi has failed to specifically allege a pattern of discrimination sufficient to suggest a continuing violation under Title VI that reaches back before 2011.  Accordingly, any conduct on the part of Yale that took place before 2011 is time-barred and is dismissed from this case.

### b.  Protected Activity

Even if Dr. Rafi had alleged a continuing violation under Title VI, however, his Title VI claims would nonetheless be dismissed in their entirety for failure to state a claim.  Although this issue was not directly raised by Defendants, Dr. Rafi's remaining Title VI claims must be dismissed because Dr. Rafi has failed to allege the requisite participation in "protected activity" under Title VI.

Title VI of the Civil Rights Act of 1964 provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, or denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.[5] A Title VI plaintiff may seek to hold qualifying programs liable for retaliation based on actions taken post-employment; for example, "[a] plaintiff can establish an actionable claim of discrimination if he can show that his employer prevented him from obtaining another position through the use of a negative employment reference and that the negative reference was issued as retaliation for engaging in protected conduct." *Hickey v. Myers*, 852 F. Supp. 2d 257, 273 (N.D.N.Y. 2012)).

"To state a claim for Title VI retaliation, a plaintiff must show: (1) participation in a protected activity, that was known to the defendants; (2) adverse action by the defendants against the plaintiff; and (3) a causal connection between the plaintiff's protected activity and the defendants' adverse action." *Palmer v. Penfield Cent. Sch. Dist.*, 918 F. Supp. 2d 192, 199 (W.D.N.Y. 2013). "A substantive violation of Title VI occurs when '(1) ... there is racial or [other prohibited] discrimination and (2) the entity engaging in discrimination is receiving federal financial assistance.'" *Id.* (quoting *Baker v. Board of Regents of State of Kansas*, 991 F.2d 628, 631 (10th Cir. 1993)).

"Title VI may … support a retaliation cause of action, if plaintiff can show that adverse decisions followed Title VI lawsuits or claims of which defendants were aware." *Scelsa v. City*

---

[5] In order "for a claimant to recover under Title VI against an employer for discriminatory employment practices, a threshold requirement is that the employer be the recipient of federal funds aimed primarily at providing employment." *Ass'n Against Discrimination in Employment, Inc. v. City of Bridgeport*, 647 F.2d 256, 276 (2d Cir. 1981). The Amended Complaint notes that the "primary research funding source" for Yale comes from the NIH, a federal agency. Am. Compl. at 25, ECF No. 51. While the Amended Complaint does not specifically note that the federal funds are primarily aimed at providing employment, drawing all inferences in favor of the plaintiff, as is required at this stage, *see York*, 286 F.3d at 125, Dr. Rafi raises a plausible claim that a primary goal of the funds designated for research was the employment of researchers.

*Univ. of N.Y.*, 806 F. Supp. 1126, 1141 (S.D.N.Y. 1992). "[T]o demonstrate participation in a protected activity under Title VI, a plaintiff need only have 'a good faith, reasonable belief that he was opposing an employment practice made unlawful' by Title VI." *Morales v. NYS Dep't of Labor*, 865 F. Supp. 2d 220, 252 (N.D.N.Y. 2012), *aff'd sub nom. Morales v. N.Y. State Dep't of Labor, Div. of Employment Servs.*, 530 F. App'x 13 (2d Cir. 2013). As noted previously, Title VI only prohibits discrimination on the basis of race, color or national origin. 42 U.S.C. § 2000d.

### i. Dr. Qumsiyeh Complaint

As with his claims under Title VII, Dr. Rafi alleges that he engaged in protected activity by refusing to serve as a "defense witness" for Yale against Dr. Qumsiyeh. Am. Compl. at 2, ECF No. 51. He never alleges that his opposition to providing such testimony was based on concerns about race or national origin discrimination, nor does he otherwise allege that he participated in activities that opposed any perceived discrimination on the basis of race or national origin.

The only reference to racial or ethnic discrimination in the Amended Complaint is a claim that Yale did not block employment opportunities for Dr. Pober, a Jewish female former employee, in the same way. Am. Compl. at 23, ECF No. 51 ("There could be no greater contrast between how Yale protects and takes care of Dr. Pober, a former faculty member (who is Jewish, influential, and affluent) versus how it chose to violate the basis civil liberties of Plaintiff (Muslim (Islamic faith), and colored Asian-American) for his polite refusal to return back to Yale to serve as a witness against Dr. Qumsiyeh….") (emphasis omitted). While this allegation resembles one related to national origin discrimination, the alleged discrimination did not take place until well after Dr. Rafi's employment with Yale, and he never indicates that he complained about perceived disparate treatment during the course of his employment. Dr. Rafi's

refusal to become more deeply involved in potential testimony against Dr. Qumsiyeh does not constitute the opposition of an employment practice made unlawful by Title VI; thus, this cannot be considered "protected activity" for purposes of a Title VI retaliation claim, and any Title VI claims based on this conduct are dismissed.

### ii.   Previous Title VII Lawsuit

Alternatively, Dr. Rafi suggests that his previous filing of a Title VII employment discrimination lawsuit against the U.S. Department of Health and Human Services could serve as protected activity which formed the basis of Yale's alleged retaliation.  Am. Compl. at 25-27, ECF No. 51.  Dr. Rafi's complaint, however, was not in opposition to any perceived Title VI violation on the part of Yale; rather, it complained of discrimination under Title VII on the part of a separate entity based on a separate employment relationship.  *Id.*

While some district courts in this Circuit have held that a plaintiff may bring a Title VI retaliation complaint based on opposing an employer's discriminatory practices where those practices affected employees other than the plaintiff, *see Hickey v. Myers*, No. 09-CV-01307, 2010 WL 786459, at *4 (N.D.N.Y. Mar. 2, 2010) ("Title VI provides a cause of action for retaliation and that Plaintiff can bring this cause of action even though he was not the subject of the discrimination complaint"), the Court cannot identify any case law suggesting that a Title VI retaliation complaint should proceed against an employer based exclusively on complaints of discrimination made against an entirely separate employer.[6]

---

[6] The Court notes that the Second Circuit has held, in *McMenemy v. City of Rochester*, 241 F.3d 279 (2001), that retaliation claims under Title VII may be appropriately based on complaints made about a separate employer where "the two employers have a relationship that may give one of them an incentive to retaliate for an employee's protected activities against the other."  *Id.* at 284-285.  However, the Second Circuit's ruling in *McMenemy* relied on the broad language in Title VII governing retaliation claims, which is absent from the text of Title VI.  *Id.* Accordingly, the Court declines to extend the holding in *McMenemy* to retaliation claims under Title VI, based on the allegations in this Amended Complaint.

As participation in protected activity is an element of a Title VI retaliation claim, and the Amended Complaint does not allege any protected activity under Title VI, Dr. Rafi's Title VI retaliation claim is dismissed.

### 3. Title IX

In addition to his claims under Title VII and Title VI, Dr. Rafi also seeks to hold Yale liable under Title IX. Defendants argue that these claims should be dismissed because Dr. Rafi has not alleged any gender discrimination on the part of Defendants.

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance…." 42 U.S.C. § 1681(a). "[T]he text of Title IX prohibits a funding recipient from retaliating against a person who speaks out against sex discrimination, because such retaliation is intentional 'discrimination' 'on the basis of sex.'" *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 178 (2005).

Dr. Rafi's claim under Title IX suffers from similar deficiencies as his claim under Title VI; namely, he fails to articulate any discriminatory or retaliatory conduct on the particular ground that is protected by the statute. The Amended Complaint does not include any allegations that he spoke out against sex discrimination or otherwise challenged activity covered by Title IX. While he briefly makes allegations about the disparate treatment of a female former Yale employee, they do not relate to any real or perceived sex discrimination that took place during Dr. Rafi's employment with Yale. Am. Compl. at 23, ECF No. 51. As Title IX only covers sex discrimination, and Dr. Rafi does not allege any sex discrimination that arose in the

context of his employment with a federally-funded educational institution, Title IX can provide

no relief, and Dr. Rafi's claims under Title IX are dismissed.

### 4. Section 1981

The Amended Complaint further claims that both Dr. Lifton and Yale violated Dr. Rafi's

rights under Section 1981.  Am. Compl. at 28, 31-33, ECF No. 51.  The Court disagrees.

### a.  Timeliness

Defendants seek dismissal of only some of Dr. Rafi's Section 1981 claims, asserting that

any claims relating to conduct that took place before October 2011 are time-barred based on the

applicable three-year statute of limitations.  Def. Mem. in Supp. at 13-14.  Defendants correctly

state the statute of limitations, and the majority of Dr. Rafi's allegations relate to conduct that

took place more than three years before Dr. Rafi initiated this lawsuit in federal court.  *See Holt*

*v. KMI-Cont'l, Inc*., 95 F.3d 123, 131 (2d Cir. 1996) ("Since § 1981 does not have a statute of

limitations, federal courts use the most analogous state statute of limitations in claims brought

under § 1981… In Connecticut, the applicable period is the three year statute of limitations in

tort.").  Thus, as Dr. Rafi did not initiate this case until 2014, *see* Compl., ECF No. 1, all of Dr.

Rafi's Section 1981 claims relating exclusively to conduct that took place before 2011 are

dismissed.

### b.  Protected Activity

With respect to any aspects of Dr. Rafi's Section 1981 claim that pertain to conduct that

took place after 2011, Dr. Rafi also fails to state an actionable claim because Dr. Rafi remains

unable to establish the requisite participation in a protected activity.

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall

have the same right in every State and Territory to make and enforce contracts ... as is enjoyed

by white citizens."  42 U.S.C. § 1981(a).  "42 U.S.C. § 1981 encompasses claims of

retaliation[,]"  *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 457 (2008), and "[r]etaliation under

Section 1981 is analyzed under the same standards as a Title VII retaliation claim."

*Villavicencio v. Gure-Perez*, 56 F.Supp.3d 178, 186 (E.D.N.Y. 2014) (citing *Little v. N.E. Util.*

*Serv. Co.*, 299 Fed.Appx. 50, 52 (2d Cir. 2008)).  Thus, as with Title VII, a *prima facie*

retaliation case under Section 1981 requires a plaintiff to allege that: "(1) []he engaged in

protected activity; (2) the employer was aware of that activity; (3) the employee suffered a

materially adverse action; and (4) there was a causal connection between the protected activity

and that adverse action."  *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716

F.3d 10, 14 (2d Cir. 2013).

 For similar reasons to those outlined above, Dr. Rafi fails to state an actionable retaliation

claim under Section 1981 with respect to any remaining retaliatory conduct that took place after

2011.  When describing the "protected activity" element of a Section 1981 retaliation claim,

courts have required plaintiff to "have taken action ... to protest or oppose statutorily prohibited

discrimination…. This protected activity must put the employer on notice that the employee feels

that he has been the object of discrimination."  *Fouche v. St. Charles Hosp.*, 64 F.Supp.3d 452,

458 (E.D.N.Y. 2014).  As discussed above in connection with the other anti-retaliation

protections alleged in Dr. Rafi's Amended Complaint, Dr. Rafi has failed to establish

participation in any race-based or ethnic-based "protected activity" recognized by this statute.

*See id.* (finding no *prima facie* retaliation case under Section 1981 where "the Plaintiff's

complaint to her supervisor was race-neutral").  Without pleading the element of "protected

activity," Dr. Rafi fails to state a claim under Section 1981, and this claim is dismissed.

**5. Section 1983**

Finally, Dr. Rafi requests "appropriate equitable relief against the Defendants as allowed

by… 42 U.S.C. § 1983." Am. Compl. at 35, ECF No. 51. However, Dr. Rafi fails to state a

valid Section 1983 claim because neither Dr. Lifton nor Yale was acting under color of state law.

42 U.S.C. § 1983 (limiting liability to persons acting "under color of any statute, ordinance,

regulation, custom, or usage, of any State or Territory").

Courts have long held "that the relief provided by 42 U.S.C. § 1983 applies to official

state action only." *Huff v. Notre Dame High Sch. of W. Haven*, 456 F. Supp. 1145, 1147 (D.

Conn. 1978) (citing *Civil Rights Cases*, 109 U.S. 3, 11 (1883)); *see also Rodriguez v. Weprin*,

116 F.3d 62, 65 (2d Cir. 1997) ("To state a claim under § 1983, a plaintiff must allege (1) the

deprivation of a right secured by the Constitution or laws of the United States (2) which has

taken place under color of state law.") "That a private entity performs a function which serves

the public does not make its acts state action" for purposes of Section 1983. *Rendell-Baker v.

Kohn*, 457 U.S. 830, 842 (1982)); *see also Stefanoni v. Darien Little League, Inc.*, 101 F.Supp.3d

160, 172 (D. Conn. 2015) ("Section 1983 does not provide a remedy with respect to 'merely

private conduct, no matter how discriminatory or wrongful.'") (quoting Am. *Mfrs. Mut. Ins. Co.

v. Sullivan*, 526 U.S. 40, 49–50 (1999)).

Dr. Rafi contends that Yale, a private educational institution, should be considered a state

actor for Section 1983 purposes because it benefits from a tax-exempt status, receives state

funding for research grants, works closely with the Connecticut Mental Health Center and has

historical governmental ties within the State of Connecticut. *See* Def. Mem. in Opp. Exs. 1-6,

ECF No. 62-1. These ties, however, are not sufficient to transform Yale into a "state actor" for

purposes of Section 1983 liability. *See Porter v. Morris*, Case No. 3:11-CV-697 (CFD), 2011

U.S. Dist. LEXIS 78060 (D. Conn., Jul. 19, 2011) (finding that the Yale New Haven Hospital is not a "state actor" for Section 1983 purposes based on its receipt of state funding).

Under the Supreme Court's ruling in *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374 (1995), in order to establish that a private institution is sufficiently connected to government actors to convert the entity into a government actor for purposes of Section 1983 liability, a plaintiff must establish that "the Government create[d the] corporation by special law, for the furtherance of governmental objectives, and retain[ed] for itself permanent authority to appoint a majority of the directors of that corporation…." *Id.* at 399; *see also Hack v. President & Fellows of Yale Coll.*, 16 F.Supp.2d 183, 189 (D. Conn. 1998), *aff'd*, 237 F.3d 81 (2d Cir. 2000) ("because the amended complaint does not satisfy each prong of the *Lebron* test, Yale cannot be considered a state actor."); *see also Stefanoni,* 101 F.Supp.3d at 173 (noting that, under the "entwinement test," "private conduct qualifies as state action when '[t]he State has so far insinuated itself into a position of interdependence with [the private party] that it must be recognized as a joint participant in the challenged activity.'") (quoting *Hadges v. Yonkers Racing Corp.*, 918 F.2d 1079, 1081 (2d Cir. 1990)).  The Amended Complaint contains no such allegations with respect to Yale, and Dr. Rafi's Section 1983 claims against Yale are dismissed accordingly.

Similarly, Dr. Rafi has not alleged that Dr. Lifton's actions were tied to governmental activity; thus, he cannot plausibly claim that Dr. Lifton was acing "under color of state law" as required for a Section 1983 claim.  "[A] private actor acts under color of state law when the private actor is a willful participant in joint activity with the State or its agents… A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324

(2d Cir. 2002); *see also Harrison v. N.Y.*, 95 F. Supp. 3d 293, 322 (E.D.N.Y. 2015) ("The conduct of private persons or entities, no matter how discriminatory or wrongful, generally does not constitute state action and therefore cannot form the basis of a Section 1983 claim.").  The Amended Complaint does not include any allegations that Dr. Lifton acted in concert with any state actors; accordingly, all claims under Section 1983 are dismissed.

## IV.    CONCLUSION

Defendants' motion to dismiss is **GRANTED**.  Defendants' accompanying motion for a more definite statement and motion to strike are **DENIED AS MOOT**.

In light of the significant deficiencies identified above, it is unlikely that further amendment would be productive; accordingly, this case is dismissed with prejudice.  *See Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) ("Where it appears that granting leave to amend is unlikely to be productive… it is not an abuse of discretion to deny leave to amend.") (citing *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993)).

The Clerk of the Court is instructed to close this case.

SO ORDERED in Bridgeport, Connecticut this 27th day of July, 2017.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE